IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Johnnie Smith, Jr., | ) | Case No. 8:12-02566-DCN-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Robert Stevenson, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 27.] Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on September 4, 2012.[1] [Doc. 1.] On February 19, 2013, Respondent filed a motion for summary judgment and a return and memorandum. [Docs. 27, 28.] On February 20, 2013, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 29.] Petitioner filed a response in opposition on May 30, 2013. [Doc. 43.]

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Petitioner, this action was filed on September 4, 2012. [Doc. 1-2 (envelope stamped as received by prison mailroom on September 4, 2012).]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is incarcerated in the Lee Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for York County.[2]  [Doc. 1 at 1; Doc. 39 (notice of change of address to Lee Correctional Institution).]   Petitioner was indicted in March 2005 for trafficking marijuana.   [App. 396–97.[3]]  On July 26, 2005, represented by Vick Meetze ("Meetze"), Petitioner proceeded to trial.[4]  [App. 1–296.]  On July 28, 2005, the jury returned a verdict of guilty.  [App. 288.]  Petitioner was sentenced to 25 years imprisonment and a fine of $25,000.  [App. 295.]

---

[2]When he filed the Petition, Petitioner was incarcerated at Broad River Correctional Institution.  [Doc. 1 at 1.]   On May 3, 2013, Petitioner filed a notice of change of address updating his address to Lee Correctional Institution.  [Doc. 39.]  A prisoner's immediate custodian—the warden of the facility where the prisoner is being held—is the proper respondent in a habeas corpus action because the immediate custodian has the power to produce the prisoner's body before the habeas court.  *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).  If a prisoner properly files a habeas petition naming the prison warden as the respondent and is relocated to another prison before the court decides whether or not to grant the petition, the court "retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."  *Id.* at 441 (discussing *Ex parte Endo*, 323 U.S. 283 (1944)).  Thus, this Court retains jurisdiction over the Petition following Petitioner's transfer from Broad River Correctional Institution to Lee Correctional Institution.

[3]The Appendix can be found at Docket Entry Numbers 28-1 through 28-4.

[4]Petitioner was tried jointly with a co-defendant, Derrick L. Turner ("Turner").  [App. 1–296.]  At the time of Petitioner's trial, charges were also pending against another co-defendant, Lawanci Carter ("Carter").  [App. 166–67 (testifying marijuana trafficking charges were pending against Carter, and he hoped to get the charges dropped by testifying at Petitioner and Turner's trial).]

**Direct Appeal**

Petitioner filed a timely notice of appeal. [Doc. 28-6.] On February 26, 2007, Robert M. Dudek of the South Carolina Commission on Indigent Defense filed a brief on Petitioner's behalf in the South Carolina Court of Appeals, raising the following issues:

1.

Whether the court erred by refusing to direct a verdict where there was no direct or substantial circumstantial evidence appellant was guilty of trafficking in more than ten pounds but less than one hundred pounds of marijuana?

2.

Whether the court erred by refusing to direct a verdict of acquittal where there was no direct or substantial circumstantial evidence appellant conspired to traffick in more than ten but less than one hundred pounds of marijuana?

[Supp. App. 20.[5]] On September 25, 2007, the South Carolina Court of Appeals issued an unpublished per curiam opinion affirming the trial court's decision. [Supp. App. 3.] Remittitur was issued on October 12, 2007. [Supp. App. 1.]

**PCR Proceedings**

On May 15, 2008, Petitioner filed a pro se application for post-conviction relief ("PCR") in which he alleged he was being held in custody unlawfully based on the ineffective assistance of counsel. [App. 299–305.] On May 5, 2009, Petitioner, through his attorney Tricia A. Blanchette, submitted an amendment to his application in which he raised the following claims:

1. Ineffective Assistance of Trial Counsel, specifically but not limited to the following grounds:

---

[5]The Supplemental Appendix can be found at Docket Entry Number 28-5.

a.      Failure to prepare and investigate, specifically failure to review discovery and audio/video evidence prior to trial.

b.      Failure to review applicable code and case law with Applicant prior to trial.

c.      Failure to inform the Applicant regarding the State's evidence and defense strategy prior to the rejection of the plea offer.

d.      Failure to move for a severance from co-defendant Derrick Turner, and the failure to investigate or obtain useful testimony from co-defendant Derrick Turner.

e.      Failure to prepare or investigate the testimony of Lawanci Carter and the confidential informant.

f.      Failure to review chain of custody issues with the Applicant prior to trial and make a pre-trial motion regarding the chain of custody.

g.      Failure to interview and obtain the testimony of Tina Morgan.

h.      Failure to make an objection following the court's comments regarding culpability and imposition of the mandatory sentence.

2.    Ineffective Assistance of Appellate Counsel: Failure to file for rehearing or writ of certiorari following the appellate court's reliance on State v. Derrick Turner, 317 S.C. 595, 641 S.E.2d 436 (2007).

[App. 311–12.]

An evidentiary hearing concerning the application was held on May 18, 2009. [App. 314–69.] At the hearing, testimony was received from Tina Morgan, Turner, Petitioner, and Meetze. [*Id.*] On June 2, 2009, the PCR court filed an order denying and dismissing the application with prejudice. [App. 372–86.]

4

On June 9, 2009, Petitioner filed a motion to alter or amend pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure.  [App. 387–91.]  Petitioner submitted the following grounds in support of the motion:

1.     Testimony of Derrick Turner

On page 11, the [PCR court's] Order states: "He, Turner, testified that he did not know co-defendant Carter nor the confidential informant but did know the Applicant."  The Applicant would respectfully submit that Mr. Turner testified that he did know Lawanci Carter, but he did not know the confidential informant.  Therefore, Turner's testimony was in line with Carter's testimony at trial that he knew Turner, but he (Carter) did not know the Applicant.

At the PCR hearing, the Applicant alleged that Turner's testimony would have been instrumental in conjunction with Tina Morgan's testimony to establish why the Applicant was present at the scene of the drug deal and the Applicant's knowledge of the confidential informant and Mr. Carter. Therefore, the Applicant would respectfully request that this Court review the testimony of Derrick Turner and reconsider and/or alter or amend the sections of the Order pertaining to Derrick Turner and Tina Morgan.

2. Rejection of Plea Offer

In the Order, this Court finds that trial counsel was ineffective when he failed to properly review and advise the Applicant, under State v. McCluney, 361 S.C. 606, 607 S.E.2d 485 (2004), prior to the rejection of the plea offer for seven (7) years.  The Applicant does not refute this finding.

After making a finding of ineffective assistance of counsel, this Court turned to the second prong of the Strickland test and stated: "Therefore, the Court must turn to the second of the Strickland test, that is, but for counsel's failure to advise Applicant regarding the impact McCluney had on the weight issue there is a reasonable probability Applicant would not have gone to trial, but would rather would [sic] have taken a plea offer of seven (7) years imprisonment."  This Court further found and the Applicant would submit he clearly testified that he would have accepted the plea offer, entered a plea of guilty and not proceeded to trial if he would have been properly advised regarding McCluney.

5

In the Order, this Court relied upon the South Carolina Supreme Court's recent decision in Davie v. State, 675 S.E.2d 416 (2009). In Davie, the South Carolina Supreme Court interpreted the Strickland test as follows:

> To prevail on his claim of ineffective assistance of counsel, Petitioner was required to prove that 1) plea counsel's failure to communicate the State's initial, fifteen-year plea offer constituted deficient performance, and 2) he was prejudiced by this deficient performance, i.e., there is a reasonable probability that but for counsel's deficient performance, he would have accepted the original plea offer.

> Davie, 675 S.E.2d at 420. The Applicant would respectfully submit that he established beyond a reasonable probability that but for counsel's deficient performance he would have accepted the plea offer; therefore, the Applicant would submit that he is entitled to relief under Strickland and Davie.
>     It appears that this Court had denied relief due to concern that the Applicant would not have entered a guilty plea or that the Applicant is contending that he is not guilty. Yet, the Applicant would submit the [sic] he clearly testified and the Order even reflects that [sic] fact that he would have pled guilty if he was properly advised by counsel. Here, not only did the Applicant testify that he was misadvised but plea counsel conceded that he misadvised the Applicant prior to the rejection of the plea offer.
>     Therefore, the Applicant would respectfully request this Court to reconsider the Order issued on June 1, 2009 and direct an entry of a new judgment. . . .

[App. 388–90 (citations omitted).] The PCR court denied the motion on June 29, 2009, with an addendum explaining the "relief conundrum" presented by Petitioner's ineffective assistance of counsel claim with respect to the rejected plea offer. [App. 392–95.]

A notice of appeal was timely filed and served. [Doc. 28-7.] On January 27, 2010, Wanda H. Carter of the South Carolina Commission on Indigent Defense filed a petition

6

for writ of certiorari on Petitioner's behalf in the South Carolina Supreme Court, seeking review of the PCR court's decision and raising the following issue:

> The PCR court erred in finding no prejudice after ruling the counsel was ineffective in misadvising petitioner contrary to State v. McCluney, 361 S.C. 607, 606 S.E.2d 485 (2005), that he would not be convicted on the trafficking offense charged against him because the weight of the drugs totaled 8.2 pounds, which was below the threshold ten pounds or more as listed in the indictment.

[Doc. 28-8 at 3.]  On June 23, 2011, the South Carolina Supreme Court granted the petition [Doc. 28-10], and Petitioner submitted his brief on September 22, 2011 [Doc. 28-11].  On November 22, 2011, the State moved to hold the matter in abeyance pending the United States Supreme Court's decision in *Lafler v. Cooper*, a case that raised an analogous issue.  [Doc. 28-12.]  The court granted the motion [Doc. 28-13], and on April 20, 2012, following the United States Supreme Court's decision in *Lafler*, the State filed its brief [Doc. 28-14].  On June 27, 2012, the South Carolina Supreme Court dismissed the petition as improvidently granted [Doc. 28-15], and the court issued remittitur on July 16, 2012 [Doc. 28-16].

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on September 4, 2012 pursuant to 28 U.S.C. § 2254.  [Doc. 1.]  Petitioner raises the following grounds for relief, quoted substantially verbatim:

> **Ground One(a)**:    Whether the court erred by refusing to direct a verdict where the[re] was no direct evidence or substantial circumstantial evidence to find Petitioner guilty of trafficking in more than 10 pounds but less than 100 pounds of marijuana?

7

**Ground One(b)**:    Whether the Court erred in refusing to direct a verdict of acquittal where there was no direct or substantial evidence Petitioner conspired to traffick in more than 10 but less than 100 pounds of marijuana?

*Supporting Facts*:    Petitioner was indicted for the offense of trafficking in marijuana more than 10 pounds but less than 100 pounds. The language of the indictment did not state that Petitioner conspired of attempted to conspire with anyone in particular, and it was admitted during trial that <u>only 8.2 pounds</u> of marijuana was actually at issue. . . .

McCrorey[, a criminal informant,] asked Carter to sell him 10 pounds of marijuana. McCrorey set the transaction to take place at a truck stop off of Highway 901. Cashier[, a narcotics agent working with McCrorey,] monitored the parking lot of the truck stop. He remembered a blue impala with three individuals inside, Carter, Turner and Petitioner. There was [no] evidence Petitioner participated in the exchange of marijuana at the truck stop. McCrorey dealt [only] with Carter. When the police moved in to make the arrest Turner attempted to flee the scene. There was no evidence money ever changed hands, and the marijuana was being reviewed when the police moved in.

Cashier admitted no phone calls in the case were ever made to Petitioner. Cashier also admitted that nowhere in McCrorey's statement to police did he indicate he ever had any contact or conversation with Petitioner. The statement made <u>no</u> mention of Petitioner at all. McCro[re]y also admitted he never had any conversation or contact with Petitioner.

The only evidence against Petitioner was that he was in the car with Carter and Carter's only claim came the day of trial when he claimed Petitioner told him the marijuana was under the seat. Carter candidly admitted that he did not put those facts in his statement to police. There was no link to Carter or McCrorey oth[er] than the self-serving claim made by Carter. There was not only not any substantial circumstantial evidence, but there was no evidence Petitioner conspired with anyone to

8

traffick more than 10 but less than 100 pounds of marijuana.

Here the State only proved that Petitioner was in the automobile with Carter and Turner and all the State had against Petitioner was Carter's one time assertion at trial that Petitioner "said" the marijuana was underneath the seat.  Carter's statement to police omitted any reference to such a claim.  The buy[er]-seller relationship in this case [was] between McCrorey and Carter.  Even if the State was able to tie Petitioner to the awareness of that buyer-seller relationship it was insufficient to make Petitioner guilty of conspiracy to traffick 10 to 100 pounds of marijuana.  Petitioner did not know Carter -- the seller -- or McCrorey -- the buyer.  The State simply failed to prove Petitioner conspired to sell 10 to 100 pounds of marijuana in fact the actual weight of the marijuana was 8.2 pounds, which clearly did not even trigger the statute[.]

. . . .

**Ground Two**:        The PCR Court and State Supreme Court's decisions was objectively unreasonable in finding no prejudice after ruling counsel was ineffective in misadvising Petitioner that he would not be convicted on the trafficking offense because the weight of the marijuana totaled 8.2 pounds, which was below the 10 pounds or more as listed in the indictment.

*Supporting facts*:        During trial Officer's testified that confidential informant Claven McCrorey called Lawanci Carter and placed an order to purchase 10 pounds of marijuana.  On November, 23 2004, McCrorey arrived an Crenco Gas Station with the marijuana.  Derrick Turner and Petitioner were in the car with Carter when McCrorey saw them arrive at the gas station.  Carter exited and entered McCrorey's . . . .

. . . .

9

. . . was not met,[6] then Petitioner was [not] guilty as charged.   During PCR Counsel admitted he gave Petitioner "bad advice" when he presented the threshold arugment as sound defense strategy. Counsel further admitted he was "wrong" and gave Petitioner misadvise and that he was not entirely familiar with State v. McCluney, supra, App.p.357, L.11 - p.358, L.25.

It is clear through counsel's own omissions he was ineffective and rendered deficient performance by misadvising Petitioner regarding a weight defense.  The PCR Court ultimately agreed and ruled counsel erred in this regard and that counsel's reliance on the weight issue as a sole basis of his trial strategy fell below the standard of reasonableness, App.p.376.  Yet, although the PCR Court found counsel was ineffective the court unreasonably determined that Petitioner suffered no prejudice simply because Petitioner claimed his innocence and would not have pled guilty anyway.

The PCR Court and State Supreme Court erred with respect to the prejudice finding, for in cases where counsel's ineffectiveness is attacked is twofold, the test is simply deficient performance, and where counsel's performance is deficient, the questions is whether but for counsel's error there is a "reasonable likelihood the result of the proceeding would have been different".

Petitioner asserts the PCR Court and State Supreme Court's decision was not only contrary to clearly established federal law, but was also objectively unreasonable in light of the evidence presented in the record. . . .

**Ground Three**:                The PCR Court erred in failing to find counsel rendered ineffective assistance in failing to move for severance or investigate and obtain useful testimony from co-defendant Derrick Turner?

---

[6]The Court notes that a page appears to be missing from the Petition received by the Court; the page numbers supplied by Petitioner skip from 4 to 6, and the text does not flow logically from one page to the next. [*See* Doc. 1 at 17–18.]

*Supporting facts*:          During Trial the Solicitor argued that the original agreement was between Carter and McCrorey to sell 10 pounds of marijuana, Tr.p.206 - 208.  The Solicitor further argued that there was direct and circumstantial evidence that Petitioner and co-defendant Derrick Turner were involved in the conspiracy.

The only evidence against Petitioner in this case was that he was merely present in the car.  During trial Narcotics Agent Jason Dalton testified Turner got out of the car with Carter and approached McCrorey's car.

Derrick Turner testified at Petitioner's PCR hearing on Petitioner's behalf.  Turner testified that he was represented by attorney Jerry Screen he was <u>not</u> advised by counsel to help Petitioner, nor did he testify counsel had advised him <u>not</u> to help Petitioner.  The import of Turner's testimony was that he (Petitioner) did [not] know Carter, McCrorey or the confidential informant.  Turner testified he [would] have testified at Petitioner's trial that Petitioner did <u>not</u> know the other alleged co-defendants which was critical since the State was relying on a "conspiracy" theory in order to obtain a conviction against Petitioner, (emphasis supplied).

On cross-examination Turner testified he was advised by his attorney that his attorney would handle everything.  The PCR Court ruled that the Court found nothing in Turner's testimony that indicated ineffective assistance of counsel by Petitioner's counsel.  The PCR Court noted that Turner's counsel was not called as a witness at the PCR hearing and therefore there was no proof counsel would have allowed Petitioner's counsel to interview Turner.  The PCR Court further noted that Turner's testimony is that he was told by counsel not to have contact with his co-defendants, an admonition that would seem to . . . extend to their counsel.

Petitioner asserts that the PCR Court's finding on this issue was objectively unreasonable in light of the evidence presented during the PCR hearing, since Turner did testify at the PCR hearing that he "would have testified" on Petitioner's behalf.

11

Trial counsel testified he did not move for severance of Petitioner's trial with that of co-defendant Derrick Turner.  Counsel further testified he did discuss the possibility of severance with Petitioner.  Petitioner testified that he did ask counsel to move for severance, yet the PCR Court concluded Petitioner has not shown the Court any grounds on which to base a motion for severance.  The PCR Court further concluded that there was no evidence Petitioner's joint trial with Turner compromised any of Petitioner's specific rights nor prevented the jury from making a reliable judgement about Petitioner's guilt.  To the contrary the State's theory was that Petitioner conspired with Turner and the other co-defendants to traffick 10 pounds of marijuana, yet as is seen from Turner's testimony during th PCR hearing, Petitioner did not know the other alleged co-defendants, nor did Turner testify he and Petitioner ever "conspired" to do anything as the State alleged. (emphasis supplied).

The PCR Court's decision was objectively unreasonable in light of the evidence presented during the PCR hearing.  Petitioner asserts counsel's failure to move for a severance was unduly prejudicial and compromised Petitioner's Fourteenth Amendment right to fair trial.  The failure of counsel to move for severance resulted in a spill-over of prejudice. . . .

**Ground Four**:     The PCR erred in failing to find counsel rendered ineffective assistance of counsel when counsel failed to investigate the testimony of Lawrence Carter[7] and the confidential informant?

*Supporting facts*:    Petitioner asserts he was denied the effective assistance of counsel when counsel failed to "investigate" the testimony of Lawrence Carter and the confidential informant.  The PCR Court concluded that trial counsel did [all] any defense counsel is expected to do in preparing for trial, including reviewing discovery. The PCR Court noted that counsel did not know the name of the confidential informant until shortly before

---

[7]The Court notes "Lawrence Carter" appears to be the same person referred to as "Lawanci Carter" elsewhere in the record.

trial and that Petitioner did not show any investigation of either individual's testimony would reve[a]l anything that differs from that presented in court. The PCR Court further concluded that since Lawrence Carter was represented by counsel, Petitioner's counsel could not discuss Carter's testimony without permission of his counsel, and since Petitioner did not call Carter's counsel to testify at the PCR hearing and without Carter's trial counsel's testimony at the PCR hearing the record is void as to whether Carter's counsel would have allowed Petitioner's counsel to discuss with Carter his potential testimony.

The PCR further concluded that Petitioner should have called Carter and the "confidential informant" and McCrorey to testify at the PCR hearing and since Petitioner did not, the Court had nothing with which to judge that any investigation of their testimony would have mattered or had any impact whatsoever on Petitioner's trial.

Petitioner asserts that from the onset of the case counsel has a duty to perform a reasonable investigation, this investigation does include the interviewing of witnesses that may be for or against Petitioner, not just the duty to review the discovery as the PCR Court determined.

The Sixth Amendment consists of the right to the effective assistance of counsel, but also consists of the right to Compulsory Process Clause, applicable to State criminal proceedings through the Due Process Clause of the Fourteenth Amendment, which provides that "the accused shall enjoy the right... to have compulsory process for obtaining witnesses in his favor..." U.S. Const, Amendment VI.

Under the Due Process Clause criminal prosecutions must comport with the prevailing notions of fundamental fairness. This standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . .

[Doc. 1 (some alterations in original) (footnote added).]

13

As stated, on February 19, 2013, Respondent filed a motion for summary judgment. [Doc. 27.]  On May 30, 2013, Petitioner filed a response in opposition.  [Doc. 43.] Accordingly, Respondent's motion is ripe for review.

## APPLICABLE LAW

### Liberal Construction of Pro Se Petition

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, the pro se petition still may be subject to summary dismissal.  *Id.* at 520–21.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the petitioner's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

15

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).  Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions.  28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id.*  The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts.  A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)    (I) there is an absence of available State corrective process; or
>>
>>    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may

consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[8] Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168, 1173

---

[8]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

(4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.  *See State v. McKennedy*, 559 S.E.2d 850, 854 (S.C. 2002) (reiterating that discretionary review by the South Carolina Supreme Court is not required to exhaust available state court remedies: "[South Carolina] has identified the petition for discretionary review to [the South Carolina Supreme Court] in criminal and post-conviction cases as *outside* South Carolina's standard review process. In [the South Carolina Supreme Court's] 1990 order, th[e] Court stated that petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies." (emphasis in original) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

### *Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See id.*  Bypass can occur at

20

any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477

U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.*

at 487–89; *Reed*, 468 U.S. at 16.  Absent a showing of "cause," the court is not required to consider "actual prejudice."  *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995).  However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default.  *Carrier*, 477 U.S. at 492.  To show actual prejudice, the petitioner must demonstrate more than plain error.  *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice.  To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent.  *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent").  Actual innocence is defined as factual innocence, not legal innocence.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  To meet this actual innocence standard, the petitioner's case must be truly extraordinary.  *Carrier*, 477 U.S. at 496.

## DISCUSSION

**Procedurally Barred Claims**

Procedural default is an affirmative defense that is waived if not raised by respondents.  *Gray v. Netherland*, 518 U.S. 152,165–66 (1996).  If the defense is raised, it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim.  *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995).  Here, Respondent contends Grounds Three and Four are procedurally barred because Petitioner failed to present these claims on appeal of the denial of his PCR application.  [Doc. 28 at 11–12, 15.]  Respondent also argues Petitioner

cannot overcome the default of these grounds because he cannot establish cause and prejudice or a miscarriage of justice. [*Id.* at 15–18.] Petitioner contends Grounds Three and Four are not barred or should be considered on the merits because (1) based on South Carolina law precluding hybrid representation, he could not present these grounds to the South Carolina Supreme Court and (2) he is actually innocent. [Doc. 43 at 11–17; *see* Doc. 1 at 9, 10, 11, 19.] For the reasons explained below, the Court concludes Grounds Three and Four are procedurally barred from federal habeas review, and Petitioner has failed to overcome the default of these claims.

Grounds Three and Four are procedurally barred because Petitioner failed to properly raise these grounds for relief to the state courts. Grounds Three and Four were raised to and ruled upon by the PCR court [App. 380–83], but they were not presented to the South Carolina Supreme Court in Petitioner's petition for writ of certiorari [*see* Doc. 28-8]. Because Grounds Three and Four were not fairly presented to the South Carolina Supreme Court, they are procedurally barred from federal habeas review unless Petitioner has demonstrated (1) cause for the procedural default and actual prejudice resulting from the alleged constitutional violation or (2) that a fundamental miscarriage of justice has occurred. *See Coleman*, 501 U.S. at 750; *Carrier*, 477 U.S. at 496; *Smith*, 477 U.S. at 533.

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule. *Carrier*, 477 U.S. at 488. *But see Martinez v. Ryan*, --- U.S. ---, ---, 132 S. Ct. 1309, 1315 (2012) ("Inadequate assistance of counsel at *initial-review* collateral proceedings *may* establish cause for a prisoner's procedural default

of a claim of ineffective assistance at trial." (emphasis added)).  In this case, liberally construing Petitioner's filings, Petitioner contends he can establish cause for the default of Grounds Three and Four based on the ineffective assistance of his appellate PCR counsel.  [*See* Doc. 1 at 9, 10, 11, 19; Doc. 43 at 12–13.]  However, ineffective assistance of appellate collateral counsel cannot constitute cause for the default of a petitioner's claim.  *See, e.g.*, *Martinez*, 132 S. Ct. at 1320 ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings . . . . It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial."); *Freeman v. McCall*, No. 1:12-1105-CMC-SVH, 2012 WL 5511758, at *7 (D.S.C. Oct. 5, 2012) ("[A]ny allegation that PCR appellate counsel was ineffective for not having raised other issues is insufficient to allege cause for procedural default or undue prejudice from an alleged constitutional violation.  '[T]he Fourth Circuit has unambiguously held that there is no constitutional right to counsel at the post-conviction relief stage, and, thus, there can be no error which implicates the Sixth Amendment.'" (quoting *Longworth v. Ozmint*, 302 F. Supp. 2d 535, 545 (D.S.C. 2003))), *report and recommendation adopted by* 2012 WL 5511732 (D.S.C. Nov. 14, 2012).  Therefore, Petitioner has failed to establish cause for the default of Grounds Three and Four, and accordingly, the Court need not determine whether Petitioner has demonstrated actual prejudice.  *See Kornahrens*, 66 F.3d at 1359.

Petitioner also contends he can overcome the procedural default because he is actually innocent.  [Doc. 43 at 15–17.]  "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal

habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Carrier*, 477 U.S. at 496.  The Supreme Court has elaborated that

> a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief.  "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons."
>
> . . . .
>
> . . . To invoke the miscarriage of justice exception . . . , a petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."

*McQuiggin v. Perkins*, --- U.S. ---, ---, 133 S. Ct. 1924, 1935 (2013) (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993); *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Here, Petitioner has failed to make the necessary showing of actual innocence. Petitioner relies on the inconsistencies between Carter's trial testimony and Carter's statement to police to establish he was not part of a conspiracy to traffick marijuana, and Petitioner reiterates that he was merely present when Carter delivered the drugs to McCrorey.  [Doc. 43 at 15–17.]  However, this was Petitioner's defense at trial, and on cross examination of Carter, trial counsel brought out that Carter's statement failed to mention Petitioner by name and only contained a reference that Turner had a friend with him.  [App. 180–85, 190–91.]  The Court also notes that trial counsel moved for a directed verdict for lack of sufficient evidence, which the trial judge denied [App. 202–04, 208–10, 212–16], and trial counsel moved for a new trial based on insufficient evidence, which the trial judge denied [App. 289–90].  Without more from Petitioner, such as new evidence, the

26

Court cannot conclude that Petitioner has established that he is actually innocent—i.e., that no reasonable juror would have convicted him. As a result, Grounds Three and Four are procedurally barred from federal habeas review.

**Merits of Remaining Claims**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning."). The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06. On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's

27

decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."). Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners. *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

### Direct Claim

In Ground One(a) and (b), Petitioner contends the trial court erred by refusing to direct a verdict for Petitioner where there was no direct or substantial circumstantial evidence to find Petitioner guilty of trafficking in more than 10 pounds but less than 100 pounds of marijuana. [Doc. 1 at 15.] Respondent contends Petitioner is not entitled to relief on this ground because the record clearly supports that the state court's denial of relief was not unreasonable. [Doc. 28 at 21–23.]

"[O]n review of the sufficiency of the evidence to support a criminal conviction . . . the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (emphasis in original). Recently, the Supreme Court summarized how the case law has developed under *Jackson* with respect to federal habeas claims of insufficient evidence:

28

> We have made clear that *Jackson* claims face a high bar in
> federal habeas proceedings because they are subject to two
> layers of judicial deference. First, on direct appeal, "it is the
> responsibility of the jury—not the court—to decide what
> conclusions should be drawn from evidence admitted at trial.
> A reviewing court may set aside the jury's verdict on the
> ground of insufficient evidence only if no rational trier of fact
> could have agreed with the jury." *Cavazos v. Smith*, 565 U.S.
> 1, ---, 132 S. Ct. 2, 4, 181 L. Ed.2d 311 (2011) (*per curiam*).
> And second, on habeas review, "a federal court may not
> overturn a state court decision rejecting a sufficiency of the
> evidence challenge simply because the federal court disagrees
> with the state court. The federal court instead may do so only
> if the state court decision was 'objectively unreasonable.'" *Ibid.*
> (quoting *Renico v. Lett*, 559 U.S. ---, ---, 130 S. Ct. 1855, 1862,
> 176 L. Ed.2d 678 (2010)).

*Coleman v. Johnson*, --- U.S. ---, ---, 132 S. Ct. 2060, 2062 (2012) (per curiam). Thus, this

Court may grant habeas relief on the basis of Ground One if the decision of the South

Carolina Court of Appeals in Petitioner's direct appeal was objectively unreasonable.

 To convict Petitioner of trafficking in marijuana, the State had to prove beyond a

reasonable doubt that Petitioner knowingly sold, manufactured, cultivated, delivered,

purchased, or brought into South Carolina or provided financial assistance or otherwise

aided, abetted, attempted, or conspired to sell, manufacture, cultivate, deliver, purchase,

or bring into South Carolina between 10 and 100 pounds of marijuana. S.C. Code Ann.

§ 44-53-370(e)(1); *see also State v. McCluney*, 606 S.E.2d 485, 486 (S.C. 2004)

(reiterating that attempting and conspiring to purchase the quantity of the illegal substance

specified in the relevant statute constitutes trafficking, even if the quantity of the specified

substance is not what was actually purchased). At trial, Petitioner's co-defendant, Carter,

testified the confidential informant, McCrory, called Carter and asked about getting ten

pounds of marijuana. [App. 169.] Carter then called Turner about getting the marijuana,

and Turner said he would have to call somebody. [App. 170.] Carter testified Turner called back, said "everything was straight," and told Carter to meet him the next day. [*Id.*] Carter then talked to McCrorey, and they also agreed to meet the next day. [App. 171–72.]

When Carter met Turner the next day, Petitioner was with Turner. [App. 172–73.] Carter got in the car with Turner and Petitioner, and the three went to meet McCrorey. [App. 173.] Carter testified that, when the three pulled up behind McCrorey's vehicle, Petitioner told Carter that the marijuana was behind Petitioner's seat. [App. 174.] Carter and Turner got out of the car and went to McCrorey's vehicle, but McCrorey would not let Turner in the vehicle. [App. 175.] Carter got in McCrorey's vehicle, and while Carter and McCrorey were counting the separate bags of marijuana, "the raid came." [App. 176.] Carter testified (1) he agreed to sell McCrorey ten pounds of marijuana, (2) Carter asked Turner for ten pounds of marijuana, (3) Carter thought Turner would deliver ten pounds of marijuana to him, and (4) Carter thought he was selling McCrorey ten pounds of marijuana. [App. 176–77.] Carter also testified that Petitioner did not say much, but Petitioner told Carter where the marijuana was in Turner's car. [App. 177.] On cross examination, Petitioner's trial counsel established that Carter's statement to the police omitted the detail that Petitioner told Carter where the marijuana was in Turner's car. [App. 180–85, 190–91.]

As stated, on direct appeal, Petitioner raised the same claims he has raised to this Court as Ground One. [Supp. App. 20.] The South Carolina Court of Appeals affirmed the trial court's decision in a per curiam opinion:

> Johnnie Smith, Jr., (Smith) appeals the trial court's denial of his motion for a directed verdict on the charge of trafficking in marijuana. Smith contends the State showed only

> that he was present at the scene, and his presence without the requisite knowledge warrants a reversal of the trial court's ruling.  Further, Smith argues the weight of the marijuana in issue was inadequate to sustain a conviction for trafficking in marijuana.
>
> We affirm pursuant to Rule 220(b)(1), SCACR, and the following authorities: <u>State v. Turner</u>,[9] 371 S.C. 595, 641 S.E.2d 436 (2007); <u>State v. McCluney</u>, 361 S.C. 607, 606 S.E.2d 485 (2004).

[Supp. App. 3 (footnote added).]

Upon review, the Court cannot conclude the decision of the South Carolina Court of Appeals was objectively unreasonable. *See Johnson*, 132 S. Ct. at 2062.  The record contains evidence supporting the court's decision—evidence that Petitioner was not only present at the time of the attempted drug sale, but Petitioner also told Carter, when the time came for Carter to meet with McCrorey to complete the arranged marijuana sale, where the marijuana was in the car.  [App. 172–74.]  As to the amount of marijuana involved in the attempted sale, Carter testified he agreed to sell ten pounds, asked Turner for ten pounds, expected Turner to deliver ten pounds, and thought he was selling ten pounds of marijuana to McCrorey.  [App. 176–77.]  Thus, there is evidence in the record that Petitioner committed the crime prohibited by S.C. Code Ann. § 44-53-370(e)(1).[10]

---

[9]In *State v. Turner*, the South Carolina Supreme Court affirmed the conviction and sentence of Petitioner's co-defendant Turner.  641 S.E.2d 436, 437 (S.C. 2007).  The court held the trial court did not err in denying Turner's motion to suppress a tape of an incriminating conversation between Turner and Petitioner taken while they were handcuffed and in the back of a police patrol car.  *Id.*  The Supreme Court agreed with the trial court that the taping of the conversation did not violate *Miranda v. Arizona*, 384 U.S. 436 (1966), because there was no evidence of actual interrogation or the functional equivalent of interrogation at the time of the taping.  *Id.*  The court also concluded there was no Fourth Amendment violation because "an individual does not have a reasonable expectation of privacy while being held in a police vehicle."  *Id.*

[10]Petitioner argues there is evidence in the record establishing he was merely present at the attempted sale and there is no evidence that he knew what was going on.  [Doc. 43 at 24–27.]  However, as discussed, the record also contains evidence that Petitioner was involved in the drug deal.

Accordingly, Petitioner has failed to establish that the state court's adjudication of the matter was contrary to clearly established Supreme Court precedent or an unreasonable determination of the facts. Therefore, Petitioner is not entitled to federal habeas relief with respect to Ground One.

### *Collateral Claim*

In Ground Two, Petitioner alleges the state courts unreasonably determined he suffered no prejudice from his counsel's erroneous advice that Petitioner would not be convicted of trafficking in marijuana because the weight of the marijuana was less than the weight listed in the indictment. [Doc. 1 at 17.] Petitioner contends it was unreasonable for the PCR court to determine that, although defense counsel's performance fell below the standard of reasonableness, counsel's performance did not prejudice Petitioner. [*Id.* at 18.] Respondent argues the PCR court properly denied relief because Petitioner failed to carry his burden of establishing he would have accepted the plea offer if he had received competent advice. [Doc. 28 at 30–32.]

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Richter*, 131 S. Ct. at 785. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial

review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas").  Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent.  *Id.*

A criminal defendant has a constitutional right to effective assistance of counsel, which also extends to plea negotiations and proceedings.  *Missouri v. Frye*, --- U.S. ---, ---, 132 S. Ct. 1399, 1407–08 (2012); *Lafler v. Cooper*, --- U.S. ---, ---, 132 S. Ct. 1376, 1384 (2012); *Padilla v. Kentucky*, 559 U.S. 356, ---, 130 S. Ct. 1473, 1480–81 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *see also McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) ("Since *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed.2d 799 (1963), it has been clear that a defendant pleading guilty to a felony charge has a federal right to the assistance of counsel.  It has long been recognized that the right to counsel is the right to the effective assistance of counsel." (internal citations omitted)).  In *Strickland*, the Supreme Court established that to challenge a conviction via a claim of ineffective assistance of counsel, a defendant must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  466 U.S. at 687.  To satisfy the first prong, the defendant must show that "counsel's representation fell below an

objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. In *Hill*, the Supreme Court held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel," with the modification that, "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 58–59.

Recently, the Supreme Court recognized that a defendant may establish an ineffective assistance claim if the defendant, relying on erroneous advice from his counsel, rejected a plea offer, proceeded to trial, and was convicted of a more serious crime than he would have pled guilty to or received a harsher sentence than was recommended under the terms of the plea offer. *See Cooper*, 132 S. Ct. at 1383–85. To establish prejudice, the second prong of the *Strickland* test, in such a case, the Court held

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 1385.

Here, the PCR court held an evidentiary hearing and outlined a factual basis for finding that, as to this particular issue, (1) counsel's representation fell below the standard

of reasonableness but (2) Petitioner failed to carry his burden of proof with respect to prejudice. [App. 314–69 (evidentiary hearing), App. 375–80 (PCR court's findings of fact and conclusions of law on this issue).] Specifically, the court made the following findings:

> As to trial strategy, Applicant seems to believe that he was not guilty and would be so found. However, he did testify, at least as to his approach to his plea, that he was relying on the "weight issue" and that he could not be found guilty of trafficking based on the weight of the marijuana being less than 10 pounds. Trial counsel testified that his trial strategy was based on his belief that if the jury found Applicant guilty, he would not be found guilty of trafficking based on the weight of the marijuana, an issue he argued to the jury.
>
> At the PCR hearing trial counsel testified his strategy and his advice on the significance of the weight was incorrect based on the McCluney case, supra. Trial counsel testified he was aware of McCluney, but read it in the context of the question as to a real drug and an imitation drug and not in the context of the weight being based on the weight bargained for in the instant context rather than the weight delivered.
>
> The Court finds counsel's representation regarding the weight issue, the sole basis of his trial strategy, to fall below the standard of reasonableness under professional norms. Therefore, the Court must turn to the second of the Strickland test, that is, but for counsel's failure to advise Applicant regarding the impact McCluney had on the weight issue there is a reasonable probability Applicant would not have gone to trial, but rather would have taken a plea offer of seven (7) years imprisonment.
>
> Applicant testified he did not accept the offer of seven (7) years because that was "too much" based on his assertion that he was not involved. He also testified that he would have accepted the seven (7) year offer had he been aware of the holding in McCluney and that he would not have gone to trial knowing what he now knows because of the mandatory twenty-five (25) year sentence.
>
> Trial counsel testified that Applicant did not want to take the seven (7) year offer because he maintained that he "was not guilty" and that Applicant's position as to trial strategy was not focused on the weight issue, but rather on his assertion that he, Applicant, was not guilty of anything.
>
> Here, trial counsel did not misinform Applicant, but failed to inform him of case law that diluted if not mooted trial

35

counsel's main trial strategy. Here, Applicant has testified that had he been informed of this he would have accepted the plea offer of seven (7) years and not risked going to trial facing a potential twenty-five (25) year mandatory sentence.

The Supreme Court has recently addressed this issue in Davie v. State, Supreme Court Opinion No. 26608, March 9, 2009, as follows:

> We find a case-by case approach is most consistent with our prior decisions and effectively achieves the ultimate goal of assessing whether but for counsel's deficient performance a defendant would have accepted the State's proposed plea bargain and that he would have benefit[t]ed from the offer. Because presumed prejudice is reserved to very limited situations, we hold that a defendant must show actual prejudice.
>
> X X X
>
> However, it is not always necessary for a defendant to offer objective evidence to support a claim of actual prejudice. Instead, depending on the facts of the case, a defendant's self-serving statement may be sufficient to establish actual prejudice. See Jackson v. State, 342 S.C. 95, 97, 535 S.E.2d 926, 927 (2000).

In Davie, the Court found prejudice and set forth the support for said finding as follows:

> Applying these principles to the facts of the instant case, we conclude that Petitioner has proven he was prejudiced by plea counsel's deficient performance. Initially, we conclude that the difference in the sentence Petitioner received and the plea offer is proof of prejudice. We reach this conclusion for several reasons. First, the solicitor and plea counsel both acknowledged that the State originally offered a fifteen-year sentence in exchange for Petitioner's guilty plea. Secondly, plea counsel admitted that he failed to communicate this offer to Petitioner. Thirdly, both plea counsel and Petitioner testified

36

that had this offer been communicated Petitioner would have accepted the plea agreement. Finally, had Petitioner accepted the original offer, he would have received a significantly lower sentence than the twenty-seven-year sentence that was imposed.

In the instant case the only evidence on the prejudice prong here is Applicant's testimony that had he known of the McCluney ruling and the testimony of trial counsel that Applicant contended he was not guilty and therefore was not interested in pleading.

Davie is, at least to this writer, somewhat confusing as the Court, as set forth above, states, ". . . we conclude that the difference in the sentence Petitioner received and the plea offer is proof of prejudice." After this very direct finding, the Court sets forth the reasons it reached the conclusion, but a clear reading of the sentence cited is that a difference in the plea offer and the plea proves the point, i.e., prejudice. The court here reads this analysis to require more than just a disparity in sentence offered and sentence received, were it otherwise there would be no need for a case by case analysis where an imposed sentence exceeds the offered sentence.

In the instant case Applicant received a twenty-five (25) year sentence when he would have been able to plead and receive a sentence of seven (7) years, assuming a trial judge would have accepted the plea.

The posture of this case differs from those previously addressed by our courts which have been reviewed by the court. Here, Applicant did not enter a misinformed plea, but, according to the Applicant, refused a generous plea offer based on a lack of information, went to trial, was convicted, and as a result, was subject to a mandatory sentence. He now realizes he should have taken the generous plea offer and claims he would have accepted same knowing what he now knows.

A difference here also is that in the cases cited above each of the defendants' admitted their guilt. Here, the only evidence in this record is that Applicant would not have gone to trial knowing what he knows now, not because he is guilty, but because of the mandatory sentence, and that Applicant rejected the plea, by his testimony, because he felt he was not guilty. Applicant's trial counsel testified, as noted elsewhere, that Applicant's position and strategy throughout his representation of Applicant was that he, Applicant, "was not

37

guilty, not guilty of anything." Additionally, trial counsel testified that he made it clear to Applicant that he could be found guilty of trafficking as charged and advised Applicant to take the seven (7) year plea offer.

. . . .

Based on the totality of the testimony, the Court finds that Applicant has failed to carry his burden of proof as to prejudice. It is clear to the Court from his testimony that Applicant was at no time interested in entering a plea, always, (and to date), asserts his innocence, knew he could have been found guilty of trafficking in marijuana, and knew he could be sentenced to a mandatory twenty-five (25) year sentence. The prejudice here, i.e. his sentence of twenty-five (25) years as opposed to seven (7) is, in the court's opinion, a hindsight attempt to put Humpty back together again when Humpty's fall was occasioned by Applicant's con[scious] decisions to reject a plea offer and go to trial. The Court affirmatively finds these factors extant whether or not counsel had properly advised Applicant.

The Court notes that this fact situation is the reverse of the fact situation in the reported cases found by the Court as those cases sought to set aside pleas of guilt. The fact that Applicant wants to set aside a trial verdict seems to the Court to be a difference without a distinction, except as to the point that here Applicant has never admitted his guilt. In fact, Applicant has not asked the court to vacate his sentence and allow him to enter a plea, but rather, by his application, seeks a new trial. Applicant has not offered any evidence that leads the Court to believe, even to date, that Applicant intends to enter a plea of guilt.

Applicant, while he did testify at one point he would have accepted the seven (7) year plea offer had he been aware of the McCluney case at another, he testified he "would not have gone to trial knowing what he knows now about the mandatory sentence.["] As note[d] elsewhere, trial counsel's testimony, which the Court finds credible, was that Applicant was, prior to trial, aware of the twenty-five (25) years mandatory sentence.

Applicant has failed to carry his burden of proof and has not proven that but for trial counsel's failure to recognize the significance of McCluney as to Applicant's case and failure to properly advise Applicant he, Applicant, would have pled guilty.

[App. 375–80 (internal citations and footnotes omitted).]  As stated, Petitioner moved to alter or amend the PCR court's order, arguing that he clearly testified that he would have pled guilty if he had been properly advised by defense counsel.  [App. 388–90.]  The PCR court denied Petitioner's motion, stating that its order "fully, adequately, and correctly" addressed Petitioner's claim.  [App. 392.]

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.  First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent.  *See Cooper*, 132 S. Ct. at 1384.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.  Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of Supreme Court precedent.  For example, the record reflects conflicting testimony as to whether Meetze's deficient performance[11] prejudiced Petitioner by leading Petitioner to reject a plea offer with a much lighter sentence than the sentence Petitioner received.  Notably, neither Petitioner nor Meetze testified that Petitioner rejected the seven year plea offer[12] based on Meetze's

---

[11]The Court reiterates that the PCR court determined the first prong of *Strickland*—deficient performance—was met.  [App. 376.]  Thus, Petitioner challenges the PCR court's decision only with respect to its determination that Petitioner failed to establish prejudice resulting from counsel's deficient performance [*see* Doc. 1 at 17], and therefore, the Court has considered only the PCR court's prejudice analysis on this issue.

[12]Meetze testified there was at least one other plea offer involving a sentence of ten years.  [App. 363.]

erroneous advice about the weight of the marijuana—that is, Meetze's incorrect determination that Petitioner could be found not guilty of trafficking marijuana because the amount seized was less than the amount required by statute and listed in the indictment. Rather, Petitioner and Meetze testified Petitioner rejected the plea offer because Petitioner felt he was not guilty.  [App. 333 (Petitioner's testimony that he rejected the plea offer because "[he] said [he] wasn't involved so [he] felt seven years was too much"), 347 (Petitioner's testimony that he rejected the plea because he felt he was not guilty), 348 (same), 356 (Meetze's testimony that Petitioner rejected the plea offer because Petitioner felt he was not guilty).]  Consistent with Petitioner's assertions that he felt he was not guilty, at trial, Meetze tried to establish that Petitioner was merely present and did not have knowledge of the drug deal.  [*See, e.g.*, App. 98–103 (cross examination of McCrorey establishing McCrorey dealt only with Carter with respect to the drug deal), 180–85, 190–91 (cross examination of Carter establishing Carter did not mention Petitioner by name in the statement Carter gave to police the day Carter was arrested for trafficking marijuana); *see also* App. 361 ("Our argument was going to be that the evidence was insufficient to show that he had knowledge[,] that he was merely present.  We were hoping for and trying to achieve a not guilty verdict in that – on that basis.").]

Moreover, there was no clear testimony that Petitioner and Meetze discussed the amount issue prior to Petitioner's rejection of the plea offer.  [App. 334 (Petitioner's testimony that he and Meetze talked about the amount issue on the day of trial), 344 (Petitioner's testimony that Meetze did not go over any defense with Petitioner), 356 (Meetze's testimony that the plea offer was made at least a month prior to trial), 358 (Meetze's testimony that he and Petitioner discussed the amount issue after Petitioner

40

rejected the plea offer), 363 (Meetze's testimony that he and Petitioner definitely discussed the amount issue after Petitioner rejected the plea offer but they could have also discussed it before Petitioner rejected the plea offer).]   In addition, Meetze testified he advised Petitioner to take the seven year plea offer [App. 356, 364], and he advised Petitioner that Petitioner could be convicted of trafficking marijuana and be sentenced to a mandatory minimum term of 25 years [App. 361–62, 364; *see also* App. 358 ("I did tell him that because the threshold amount was less than ten pounds but I felt like at trial we would stand a very good chance of him not being found guilty of the higher offense but if he was found guilty of anything of the lesser offense. . . . I didn't tell him definitely a hundred percent we would – – there's no way he could get convicted of trafficking but I certainly indicated to him that there was a good chance of that and I was wrong.")].

Accordingly, although Petitioner testified that, if he knew about how *McCluney* applied to his case and if he knew what he knows now, he would have pled guilty [App. 335, 336–37, 344, 348–49, 352], the record establishes that the PCR court did not unreasonably conclude that Petitioner was not prejudiced by Meetze's deficient performance.  *See Richter*, 131 S. Ct. at 785 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.").  At best, the conflicting testimony at the PCR hearing would allow fairminded jurists to disagree whether the PCR court's decision is inconsistent with Supreme Court precedent.  *See id.* at 786. ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." (citation omitted)).  Therefore, Petitioner has failed to establish that the state court's adjudication of the matter was contrary to clearly established Supreme Court precedent or an

41

unreasonable determination of the facts.  Thus, Petitioner is not entitled to federal habeas relief with respect to Ground Two.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 11, 2013
Greenville, South Carolina